[Crim. No. 1007.   Second Appellate District, Division Two.—November 19, 1923.]

THE PEOPLE, Respondent, v. GILBERT CROSS, Appellant.

[1] CRIMINAL LAW—VIOLATION OF STATE POISON ACT—CHALLENGE FOR CAUSE—REFUSAL BY COURT—ABSENCE OF PREJUDICE.—In a prosecution for a violation of the provisions of the act of 1907, as amended, regulating the sale of poisons, it is not prejudicial error to disallow defendant's challenge for cause as to three jurors, who had testified that they were prejudiced in narcotic cases, where said jurors did not serve upon the case and it is not shown that defendant, after having exercised all his peremptory challenges, had occasion or desire to use any additional peremptory

challenges or that the jurors finally accepted and sworn were not entirely satisfactory to him.

[2] ID.—COMPETENCY OF JUROR—EVIDENCE.—In such prosecution, where a juror, who at first stated that she was prejudiced "from the very nature of the charge," testified to all subsequent questioning that she would be fair, that she entertained no prejudice, but could and would lay it aside and accept the instructions of the court, and try the case upon the evidence as fairly as any other, and that she did not know of any reason why she could not be fair and impartial as a juror, both for the people and for defendant, such testimony, taken as a whole, furnished no ground for defendant's objection to the competency of said juror.

[3] ID.—EVIDENCE—CORROBORATION.—In this prosecution for a violation of the provisions of the act of 1907, as amended, regulating the sale of poisons, defendant was not convicted upon the testimony of the prosecuting witness alone, but the record showed that her testimony was corroborated by that of two police officers who witnessed the transfer of the narcotics; and the testimony of defendant denying the delivery of the narcotics only raised a conflict in the evidence, which was not reviewable on appeal.

[4] ID. — SEPARATION OF JURORS — LACK OF PREJUDICE — BURDEN OF PROOF—NEW TRIAL.—The affidavits of defendant introduced on his motion for a new trial having shown that after the cause had been submitted to the jury the jurors separated, some of them talking among themselves and with other parties in the courtroom, some in the hallway, and others in the toilet, the burden was upon the prosecution to show that such irregularity had resulted in no prejudice to defendant, and where the prosecution filed no counter-affidavit, the trial court should have granted defendant's motion for a new trial.

APPEAL from a judgment of the Superior Court of Tulare County. W. B. Wallace, Judge. Reversed.

The facts are stated in the opinion of the court.

J. W. Wright for Appellant.

U. S. Webb, Attorney-General, and Erwin W. Widney, Deputy Attorney-General, for Respondent.

2. Disqualification or incompetency of jurors by reason of bias as ground for new trial, notes, 1 Ann. Cas. 196; 12 Ann. Cas. 922; Ann. Cas. 1913A, 892; 18 L. R. A. 476.

4. Right to permit separation of jury in criminal cases other than capital, after finding of verdict, but before rendition, note, 31 L. R. A. (N. S.) 1005.

CRAIG, J.—Appellant was convicted of a misdemeanor, it being charged that on or about the eighth day of March, 1923, he willfully and unlawfully sold and furnished a quantity of morphine, contrary to the provisions of the act of March 26, 1907 (Stats. 1907, p. 124), as amended, regulating the sale of poisons.

[1] It is contended, first, that appellant's challenges for cause should have been allowed by the court as to four jurors, because they had testified that they were prejudiced in narcotic cases. Three of such jurors did not serve upon the case, and hence no prejudicial error could result. In *People* v. *Schafer,* 161 Cal. 573, 576 [119 Pac. 920, 921], it was said: "While the record shows that the defendant did subsequently exhaust his ten peremptory challenges, it does not appear that he had occasion or desire to use any additional peremptory challenge, or that each and all of the twelve jurors finally accepted and sworn were not entirely satisfactory to him. . . . This is not enough to warrant reversal for error in the ruling on the challenge for cause. . . . " This states the situation in the instant case. The same rule is announced in *People* v. *Kromphold,* 172 Cal. 512 [157 Pac. 599], and *People* v. *McMillan,* 59 Cal. App. 785 [212 Pac. 38]. [2] The fourth juror, a woman who at first stated that she was prejudiced "from the very nature of the charge," testified to all subsequent questioning that she would be fair, and that she entertained no prejudice, but could and would lay it aside and accept the instructions of the court, and try the case upon the evidence as fairly as any other; that she did not know of any reason why she could not be fair and impartial as a juror, both for the people and for the defendant. We think this testimony, taken as a whole, furnishes no ground for the appellant's objection to the competency of this juror. Besides, the record nowhere discloses any challenge, peremptory or for cause, as to this juror, and if appellant considered her incompetent to serve he waived such objection. (*People* v. *Sanford,* 43 Cal. 29, 32.)

Much argument is indulged in to discredit the testimony of the principal witness for the people, it being contended that her reputation for truth, honesty, and integrity in the community of Visalia was bad; that she had offered to accept a bribe of one hundred dollars to leave the county and

not testify against appellant, and that she was a "stool-pigeon" for the officers, who agreed to pay her fifty dollars if appellant should be convicted; also that her testimony was contradicted by that of the two officers who testified that they worked with her upon the case. It is true that witnesses called on behalf of appellant did, when asked the direct question, state that the witness' reputation was bad, but none of them appear from their testimony to have known what constituted general reputation for truth, honesty, and integrity, although they were repeatedly prompted and instructed by the court and by counsel to answer "yes" or "no" to the question whether or not they knew her general reputation. Answers that the prosecuting witness was "untruthful" were stricken out as not responsive, which is assigned as error, and it is insisted that the interruptions and explanations by the court embarrassed the witnesses before the jury and discredited their testimony. It does not appear that the court expressed any criticism as to the credibility of any witness. The explanatory remarks to which exception is taken were prompted either by objections of the district attorney or by the witnesses, in an endeavor to assist them.

The jury were instructed that the court in no manner expressed or desired to express any opinion on the weight of the testimony of any witness; that with questions of fact, the weight of evidence, and the credit to be given any witness, the court had nothing to do; that they were not to infer from any of the rulings or remarks of the court during the trial, how the court might think the case should be decided. They were further instructed that all witnesses are presumed to speak the truth, but that his presumption may be repelled and overcome by the manner in which they testify, by the manner and character of their testimony, by contradictory evidence, or when impeached by evidence that their reputation for truth, honesty, or integrity was bad. The complaining witness denied that she had ever discussed the subject of a bribe, or that she had heard it discussed, and all of the matters to which appellant here directs attention constituted questions of fact, and were covered by the instructions of the court.

[3] Appellant next asserts that when the record is carefully examined it will be noted that the jury convicted him

upon the testimony of the prosecuting witness alone, and that she was not corroborated. Such a claim is entirely without foundation. The witness in question testified that she arranged with the defendant to furnish her some narcotics, and that she drove to a house in her automobile, stopping near and directly in front of a window where two officers were concealed who could see all that transpired; that the defendant followed in another automobile, and that he stopped just to the rear of her car, alighted, came to the car in which she remained seated, and handed her a small package of narcotics, which she later gave to the officers, and which was introduced in evidence. The officers each testified to the positions of the automobiles, and of the parties, and positively stated that they witnessed the transfer of the narcotics, which were subsequently handed to them and brought into court by them. There was abundant evidence justifying the jury in concluding that the defendant was guilty. The defendant as a witness denied only the delivery of the narcotics, strenuously insisting that he merely placed some groceries in her arms before she entered the house. His testimony only raises a conflict in the evidence, which cannot be reviewed.

[4] A more serious question was raised, however, upon appellant's motion for a new trial. He and three other persons furnished affidavits stating that after the cause had been submitted to the jury the jurors separated, some of them talking among themselves and with other parties in the courtroom, some in the hallway, and others in the toilet. Respondent filed no counter-affidavit, but contends that there is no merit in appellant's motion for a new trial, citing *People* v. *Knight*, 63 Cal. App. 63 [218 Pac. 79]. In that case it does not appear that the jurors conversed with other persons, or that anyone spoke to them, but it does appear that some of them were permitted to go down the hall to a toilet, and talked among themselves in the hallway, also that the officer entered the jury-room on several occasions. The court stated in its opinion that there was nothing in the facts shown that would furnish a sufficient cause for granting a new trial.

On the other hand, certain rulings of the supreme court of this state seem controlling, and conclusive, upon the facts

presented. In *People* v. *Brannigan*, 21 Cal. 337, 339, it was said:

"The language of the oath administered to the officer having the jury in charge points out with clearness his duties. He is required to 'keep them *together*'; that is, he must not permit them to separate. He must keep them 'in some *private* and convenient place'; that is, removed from access by strangers. He must not 'permit any person to speak to them,' a duty which can only be performed by following the previous requirement of keeping them in a private place. And, finally, he must not speak to them himself, except to ask them whether they have agreed upon a verdict. When either of these requirements is disregarded by the officer, he fails to perform his duty, and the trial is irregularly conducted. If a conviction follows, the prisoner has ground to complain of the irregularity. He is entitled to all the protection which the statute intends to secure, against any interference with the action of the jury, whether arising from the hostility of personal enemies or popular prejudice. If such protection be not afforded, suspicions are excited and confidence in the justice of their decision is destroyed. It would seem therefore but reasonable, where an irregularity has been committed, which *may* have affected the jury, that the Government, seeking to uphold their action, should be called upon to show that no injury to the prisoner has followed from the irregularity complained of. If this can be shown, their verdict will not be disturbed—for the end which the law contemplated by its provisions has been attained. In the present case the irregularity consisted in the unauthorized separation of the jury, after retiring to deliberate upon their verdict. The prisoner, in his affidavit, upon which the motion for a new trial was based, alleges the separation, and the fact is not controverted, nor is any explanation of it attempted by the State. The district attorney appears to have considered it incumbent upon the prisoner to show affirmatively injury to himself resulting from the separation, or at least reason to suspect such injury. There are authorities which support this view. Such are the cases cited from the New York courts. But there are authorities of equal weight the other way, and the latter, we think, are supported by better reasons." (Italics by the court.)

In *People* v. *Adams,* 143 Cal. 208 [101 Am. St. Rep. 92, 66 L. R. A. 247, 76 Pac. 954], it was said: "Under our law there is a marked difference between a separation during the progress of the trial and a separation after final submission of the case. As to the former there is no law requiring the jury to be kept together, although the court may order them to be so kept; and it is not necessary in the case at bar to consider the significance of a violation of such an order. But it is provided in the Penal Code (secs. 1128, 1135, 1136) that after the jury have finally retired for deliberation they must be kept together; and one of the express grounds for a new trial is 'when the jury has separated without leave of the court after retiring to deliberate upon their verdict.' (Sec. 1181.) . . .

"And it is clear that the burden was not on appellant of proving affirmatively that she was prejudiced by the said separation of the jury. In this state the law on the subject was first declared in *People* v. *Backus,* 5 Cal. 275."

See, also, *People* v. *Symonds,* 22 Cal. 348; *People* v. *Cord,* 157 Cal. 562, 571 [108 Pac. 511], and *People* v. *Hawley,* 111 Cal. 78 [43 Pac. 404], to the same effect.

In the instant case, as in that of *People* v. *Brannigan, supra,* an irregularity is shown to have been committed which may have affected the jury to the appellant's injury; here also no counter-affidavits were filed by the people. The district attorney has not attempted to show affirmatively that the separation of the jurors after final submission of the case, and the fact of their conversing with others, did not prejudice the defendant and result in a verdict against him. Under these circumstances such injury to the defendant stands as a conceded fact established by presumption of law, and a reversal is necessary.

Appellant's exceptions to the refusal of requested instructions are untenable, since the general charge covers the matters embodied therein. However, for the reasons herein set forth a new trial should have been granted, and the judgment appealed from is therefore reversed.

Finlayson, P. J., and Works, J., concurred.